1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8
9   RUBEN QUEVEDO,                          CV F   06-1621 LJO DLB HC

10                  Petitioner,             FINDINGS AND RECOMMENDATION
                                            REGARDING PETITION FOR WRIT OF
11         v.                               HABEAS CORPUS

12                                          [Doc. 1]
    M.C. KRAMER, Warden,
13
                   Respondent.
14   _____/

15
16         Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant

17   to 28 U.S.C. § 2254.

18                                      BACKGROUND

19         Following jury trial in the Kern County Superior Court, Petitioner was convicted of

20   possession of methamphetamine (Cal Pen. Code[1] § 11377(a)).  Petitioner had prior convictions

21   for attempted robbery (Pen. Code § 664/211) and voluntary manslaughter (Pen. Code § 192(a)).

22   Petitioner was sentenced to twenty-five years to life under California's three-strikes law.

23         On April 17, 2001, Petitioner filed a notice of appeal. (Exhibit A.)  On October 16, 2001,

24   the California Court of Appeal, Fifth Appellate District affirmed the conviction and sentenced in

25   a reasoned decision.  (Exhibit D.)

26         Petitioner filed a petition for review in the California Supreme Court.  (Exhibit E.)  The

27   petition was denied on January 8, 2002.  (Exhibit F.)

28
    _____
       [1] All further statutory references are to the California Penal Code unless otherwise indicated.

1

1      Petitioner filed three state post-conviction collateral petitions in the Kern County

2   Superior Court: HC007513, filed April 24, 2002, and denied on May 24, 2002 (Exhibits G, H);

3   HC007735, filed on December 16, 2002, and denied on January 13, 2003 (Exhibits I, J); and

4   HC008173, filed on November 6, 2003, and denied November 25, 2003. (Exhibits K, L).

5      Next, Petitioner filed three state habeas corpus petitions in the California Court of

6   Appeal, Fifth Appellate District: F040860, filed on June 24, 2002, and denied on September 13,

7   2002 (Exhibits M, N); F042474, filed on February 24, 2003, and denied on August 14, 2003

8   (Exhibits O,P); and F044952, filed on February 23, 2004, and denied on August 4, 2005.

9   (Exhibits Q, R).

10      Lastly, Petitioner filed a habeas corpus petition in the California Supreme Court on

11   August 30, 2003, which was denied on July 12, 2006 (Exhibits S, T).

12      Petitioner filed the instant federal petition for writ of habeas corpus on November 13,

13   2006.  Respondent filed an answer to the petition on May 14, 2007.  Petitioner did not file a

14   traverse.

15      On February 22, 2008, the Court appointed the Office of the Federal Defender and

16   ordered supplemental briefing regarding Ground Five of the Petition-whether trial counsel was

17   ineffective for failing to file a suppression motion under California Penal Code section 1538.5.

18   (Court Doc. 15.)  On April 29, 2008, Petitioner filed the supplemental brief.  (Court Doc. 21.)

19   Respondent filed a response on June 27, 2008, and Petitioner filed a reply on July 16, 2008.

20   (Court Docs. 24, 25.)

21      <u>STATEMENT OF FACTS</u>

22      On June 2, 2000, Deputy Eric Banducci of the Kern County Sheriff's Depatment, along

23   with several other deputies, went to the apartment of Petitioner's brother, Jaime Quevedo, who

24   was on probation, to conduct a probation search.  (I RT 19-20.)  Jaime Quevedo, his wife and

25   children were all absent from the apartment at the time of the search.  (I RT 20, 32.)  Petitioner

26   was the only individual in the apartment at the time of the search.  (I RT 31.)  During the search,

27   Deputy Banducci located an address book on the bathroom counter on the right-hand side of the

28   sink.  A plastic bag containing a small amount of suspected narcotics was located inside the

1  pages of the address book.  (I RT 21-23, 29.)  Petitioner's name was written on the second page

2  of the address book.  (I RT 23.)

3        After being read his <u>Miranda</u> rights by Deputy Banducci, Petitioner acknowledged that he

4  understood his rights.  (I RT 24.)  The deputy showed Petitioner the bag of suspected narcotics,

5  and asked Petitioner if he knew what it was.  Petitioner responded that it was "crank."  (I RT 25.)

6  Petitioner admitted that the "crank" and address book belonged to him.  (I RT 26.)  Petitioner

7  indicated that the narcotics were for his own personal use and not for sale.  (I RT 26.)

8        Subsequent laboratory tests revealed that the narcotics consisted of .32 grams of

9  methamphetamine, and Kern County Criminalist, David T. Diosi, opined that this constituted a

10  usable amount.  (I RT 43.)

11                                      <u>DISCUSSION</u>

12  A.    <u>Jurisdiction</u>

13        Relief by way of a petition for writ of habeas corpus extends to a person in custody

14  pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

15  or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>,

16  529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

17  violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

18  out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28

19  U.S.C. § 2254(a); 2241(d).

20        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

21  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

22  enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; <u>Jeffries v. Wood</u>, 114

23  F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

24  <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

25  1114 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059

26  (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

27  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

28  ///

1    B.    Standard of Review

2          This court may entertain a petition for writ of habeas corpus "in behalf of a person in

3    custody pursuant to the judgment of a State court only on the ground that he is in custody in

4    violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

5          The AEDPA altered the standard of review that a federal habeas court must apply with

6    respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

7    Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

8    will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

9    to, or involved an unreasonable application of, clearly established Federal law, as determined by

10   the Supreme Court of the United States;" or "resulted in a decision that was based on an

11   unreasonable determination of the facts in light of the evidence presented in the State Court

12   proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 123 S.Ct. 1166, 1173 (2003)

13   (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir.

14   2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue

15   the writ simply because that court concludes in its independent judgment that the relevant state-

16   court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at

17   1174 (citations omitted).  "Rather, that application must be objectively unreasonable." Id.

18   (citations omitted).

19         While habeas corpus relief is an important instrument to assure that individuals are

20   constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

21   (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

22   criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

23   Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

24   factual determinations must be presumed correct, and the federal court must accept all factual

25   findings made by the state court unless the petitioner can rebut "the presumption of correctness

26   by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

27   S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

28   110 F.3d 1380, 1388 (9th Cir. 1997).

1

C.    Fourth Amendment Violation Based on Pretextual Probation Search of Brother's
Residence

2

Petitioner contends that his Fourth Amendment rights were violated because the drugs

3

found in his possession were seized during a pretextual probation search conducted in the home

4

of his brother, Jaime Quevedo.  Petitioner's brother, Jaime, was on probation with a condition

5

that his residence could be searched at any hour, day or night, for narcotics.  The police believed

6

that Petitioner may have been responsible for a burglary and that he was possibly hiding at

7

Jaime's home with items taken during the burglary.  As the officers were aware, Jaime was in jail

8

at the time of the burglary and was not a suspect.  The search was conducted to obtain evidence

9

against Petitioner, not Jaime.

10

This claim was raised in the petition for writ of habeas corpus, HC7513, filed in the Kern

11

County Superior Court on April 24, 2004.  (Exhibit G.)  The claim was denied in a reasoned

12

decision issued May 24, 2002.  (Exhibit H.)  Because the California Supreme Court's opinion is

13

summary in nature, however, this Court "looks through" that decision and presumes it adopted

14

the reasoning of the California Court of Appeal, the last state court to have issued a reasoned

15

opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706

16

(1991) (establishing, on habeas review, "look through" presumption that higher court agrees with

17

lower court's reasoning where former affirms latter without discussion); see also LaJoie v.

18

Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned

19

state court opinion in determining whether state court's rejection of petitioner's claims was

20

contrary to or an unreasonable application of federal law under § 2254(d)(1)).

21

A federal district court cannot grant habeas corpus relief on the ground that evidence was

22

obtained by an unconstitutional search and seizure if the state court has provided the petitioner

23

with a "full and fair opportunity to litigate" the Fourth Amendment issue.  Stone v. Powell, 428

24

U.S. 465, 494, 96 S.Ct. 3037, 3052 (1976); Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir. 1993),

25

cert denied, 511 U.S. 1057 (1994).  The only inquiry this Court can make is whether petitioner

26

had a fair opportunity to litigate his claim, not whether petitioner did litigate nor even whether

27

the court correctly decided the claim.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir.

28

1  1996); see also Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal.

2  Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under Stone was

3  necessary).

4        The policy behind the Stone Court's analysis is that the exclusionary rule is applied to

5  stop future unconstitutional conduct of law enforcement. Stone, 428 U.S. at 492. However,

6  excluding evidence that is not untrustworthy creates a windfall to the defendant at a substantial

7  societal cost. See Stone, 428 U.S. at 489-90; Woolery, 8 F.3d at 1327-28. Thus, the Ninth

8  Circuit has described the rationale for this rule by saying:

> The holding is grounded in the Court's conclusion that in cases where a
> petitioner's Fourth Amendment claim has been adequately litigated in state court,
> enforcing the exclusionary rule through writs of habeas corpus would not further
> the deterrent and educative purposes of the rule to an extent sufficient to counter
> the negative effect such a policy would have on the interests of judicial efficiency,
> comity and federalism.

12  Woolery, 8 F.3d at 1326; see also Stone , 428 U.S. at 493-494.

13        California provides defendants such an opportunity in the trial court through California

14  Penal Code section 1538.5. Petitioner's counsel chose not to file a suppression motion.

15  Petitioner could, and did, raise this claim in his all of state habeas petitions, and his claim was

16  denied. (See Exhibits G, I, K, M, O, Q, S; see Villafuerte v. Stewart, 111 F.3d 616, 627 (9th Cir.

17  1997). Because the state court provided Petitioner with a "full and fair opportunity to litigate"

18  his Fourth Amendment issue, the claim must be denied. Stone, 428 U.S. at 494.

19  D.   Illegal Search and Seizure - Fourteenth Amendment Violation

20        Petitioner contends that the search and seizure also violated his rights under the Fourteenth

21  Amendment.

22        Petitioner is not entitled to habeas corpus relief on this claim because, where a provision of

23  the Constitution "provides an explicit textual source of constitutional protection," a court must

24  assess a claim under the explicit provision and not the more generalized concept of substantive

25  due process. Graham v. Connor, 490 U.S. 386, 395 (1989); County of Sacramento v. Lewis, 523

26  U.S. 286, 293 (1999). A challenge to the reasonableness of a search by a government agent

27  clearly falls under the Fourth Amendment, and not the Fourteenth Amendment. Conn v.

28  Gabbert, 526 U.S. 286, 293 (1999). Accordingly, Petitioner is not entitled to habeas corpus relief

on this claim.

E.   Insufficient Evidence to Support Possession of Methamphetamine Conviction

Petitioner contends that his rights under the Fourteenth Amendment were violated because there was insufficient evidence presented at trial to establish his conviction for possession of methamphetamine.  Respondent argues that this claim is procedurally defaulted and without merit.

Petitioner presented this claim to the Kern County Superior Court and the California Supreme Court in state habeas petitions.  The lower court found that the claim was not properly raised on state habeas (Exhibit J), and the California Supreme Court denied the claim without comment (Exhibit T), thereby adopting the procedural default imposed by the lower court.  Avila v. Galaza, 297 F.3d at 918 (citing Ylst v. Nunnemaker, 501 U.S. at 803-804).

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546 (1991); LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001).  If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice."  Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750; Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2000).

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law."  LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001) (citing Michigan v. Long, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469 (1983)); Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996) ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'" (quoting Coleman, 501 U.S. at 735, 111 S.Ct. 2456)).  "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'"  Park, 202 F.3d at

1152 (*quoting* Ake v. Oklahoma, 470 U.S. 68, 75, 105 S.Ct. 1087 (1985)).

To be deemed adequate, the state law ground for decision must be well-established and consistently applied.  Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court.") (*quoting* Ford v. Georgia, 498 U.S. 411, 424, 111 S.Ct. 850 (1991)).  Although a state court's exercise of judicial discretion will not necessarily render a rule inadequate, the discretion must entail "'the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits.'"  Id. at 377 (*quoting* Morales, 85 F.3d at 1392).

In denying the instant claim, the Superior Court cited In re Shipp, 62 Cal.2d 547, 552 (1965), stating that the Court could not review the evidence to determine if there was sufficient evidence to support a conviction on habeas corpus.  (Exhibit J.)  The rule cited by the state court, specifically, that a challenge to the sufficiency of the evidence may not be raised by way of collateral petition, has been found to be a sufficiently independent and adequate procedural rule to support a finding that the claim is procedurally defaulted and cannot be reviewed by way of federal petition.  California courts have long held that a sufficiency of the evidence claim cannot be raised on habeas corpus, absent special circumstances.  In re Ring, 64 Cal.2d 450, 453 (1966); In re Shipp, 62 Cal.2d 547, 552 (1965); In re Dixon, 41 Cal.2d 756, 759 (1953); In re Lindley, 29 Cal.2d 709 (1947).[2]

Under Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003), once the state has properly raised the affirmative defense of procedural default, the petitioner must place the state's affirmative defense of independent and adequate state procedural grounds at issue "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure."  Id

Here, Petitioner has made no argument as to why the procedural default does not apply

---

[2]  In Carter v. Giurbino, 385 F.3d 1194 (9th Cir. 2005), the Ninth Circuit concluded that the Lindley rule, "is not intertwined with federal substantive or procedural law."  Id. at 1197.  When applying the Lindley rule, the state courts do not apply federal law, therefore, it is an independent state ground.  Id. at 1197-1198.  In Carter, the Ninth Circuit determined that "the California courts have consistently applied *Lindley* since 1947."  Id. at 1198 (citing In re Adams, 14 Cal.3d 629, 636 (1975); People v. Beghtel, 164 Cal.App.2d 294 (1958); In re Ring, 64 Cal.2d 450, 452 (1966).)

and has failed to meet his burden under <u>Bennett</u> by asserting specific factual allegations to demonstrate the inadequacy of the state procedure.  Therefore, the claim is procedurally defaulted.  In any event, even if the claim was not procedurally defaulted, for the reasons explained below, it fail on the merits.

Contrary to Petitioner's contention, the testimony of a single witness, i.e. Detective Banducci is sufficient to support his conviction.  Detective Banducci testified that he found drugs, and after advising Petitioner of his rights, Petitioner admitted that the drugs belonged to him and were for his own personal use.  A criminalist testified as to the nature and content of the drugs.  (I RT 19-32, 35-45.)   Petitioner presented no evidence to contradict the State's case, and Petitioner, himself, acknowledges that he could not take the stand as a witness because it would subject him to impeachment based on his criminal record.  (Petition, Points and Authorities, at 22.)  Based on the foregoing, sufficient evidence exists to support Petitioner's conviction for possession of methamphetamine.

F.    <u>Prosecutorial Misconduct Based on Dismissal of Three Charges</u>

Petitioner contends that the prosecutor committed misconduct by dismissing three charges against him because the only purpose of the dismissal was to eliminate any evidence regarding the basis for the search and eliminate his standing to challenge such search.

Petitioner raised this claim in the state habeas corpus petitions filed in the Fifth District Court of Appeal (Exhibit Q), and the California Supreme Court (Exhibit S).  Both petitions were denied without comment.  (Exhibits R & T.)  AEDPA's strict standard of review is relaxed when the state court reaches a decision on the merits but provides no reasoning to support its conclusion. Under such circumstances, the federal court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." <u>Brazzel v. Washington</u>, 491 F.3d 976, 981 (9th Cir.2007), *quoting* <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir.2002); <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th  Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.").

Just prior to commencement of the trial, the prosecutor dismissed the single counts of felony burglary, felony receiving stolen property, and misdemeanor resisting arrest.  The dismissal was made in the interest of justice, as the prosecutor stated that, although there was some information linking Petitioner to the burglary, such information was only that a stocky Hispanic male was seen entering the place that was burglarized.  (I RT 6.)  The prosecutor stated that Petitioner's brother was also a suspect in the burglary, however, Petitioner disputes this fact because his brother was in jail at the time of the burglary. (Id.)

It is not uncommon for the State to dismiss certain counts charged in a multiple count indictment.

> Such action is frequently undertaken for a variety of reason- - some counts are redundant, some are more difficult to prove than others, some are simply overcharged in the first instance and so recognized by the prosecution.
>
> We are aware of the extensive prosecutorial discretion vested in the executive branch.  (See *People v. Brigham* (1989) 216 Cal.App.3d 1039, 1052, 265 Cal.Rptr. 486.)

People v. Williams, 10 Cal.App.4th 827, 834 (1992).

The prosecutor explained on the record, the three counts were dismissed due to insufficient evidence, and the prosecutor simply elected to pursue the one count which was the strongest.  The prosecutor complied with the requirements under Penal Code section 1192.6 and placed a statement on the record regarding the reasons for dismissing the charged felonies.  The trial court accepted the explanation.  (I RT 6.)  This requirement exists for the public's benefit, not Petitioner's.  People v. Hamilton, 40 Cal.App.4th 1615, 1619 n.3 (1995) (the purpose of these statutes is to prevent prosecutorial and judicial plea bargain abuse with pleas that are too lenient, and to avoid public suspicion and distrust from practices which are secret).  Thus, Petitioner lacks standing to currently challenge the adequacy of the prosecutor's statement regarding dismissal of the charges.  In addition, Petitioner's claim that the prosecutor's stated justification for the dismissal was intended to mislead the court, is simply unfounded and without any evidentiary support.

It appears that Petitioner is attempting to argue that, if the three counts had not been dismissed, the presentation of the evidence to prove those counts would have required the

Case 1:06-cv-01621-LJO-DLB   Document 27   Filed 06/18/09   Page 11 of 28

prosecution to produce evidence regarding the legality of the search. (Petition, Points and Authorities, at 26.) However, the legality of the search is solely a determination made by the judge pursuant to Penal Code section 1528.5, not the jury.

In a related argument, Petitioner appears to argue that the dismissal of these three counts deprived him of standing to challenge the search. (Petition, Points and Authorities, at 27.) However, the inclusion or dismissal of the three counts had no impact on Petitioner's ability or inability to bring a suppression motion under Penal Code section 1538.7.   Accordingly, Petitioner's claim must be denied.

G.     Ineffective Assistance of Trial Counsel - Failure to File Suppression Motion

Petitioner contends that trial counsel deprived him of his right to effective counsel under the Sixth Amendment by 1) failing to bring a suppression motion under Penal Code section 1538.5 due to counsel's erroneous belief that the search was properly conducted under Jaime Quevedo's probation condition; and (2) failing to be aggressive enough in bringing motions and questioning witnesses.

1.     Factual Background

On June 2, 2000, the Kern County Sheriff's Department was investigating a burglary of the manager's office at the Springwood Court apartment complex in Bakersfield.  Several items were taken from the office including computer equipment, keys, and rent checks and money orders.  Petitioner, who was a former maintenance employee of the complex, was identified as a suspect. (Exhibit I, at Exh. 3.)

On that same day, sheriff's deputies received a phone call from an informant who indicated that Petitioner was involved in the burglary, was in possession of some of the stolen property, and was staying at his brother's apartment at 901 Columbus Street, apartment 160, in Bakersfield. (Id. at Exh. 4.)

Detective Banducci then discovered that Petitioner's brother, Jaime Quevedo's address was 901 Columbus Street, apartment 125 (not 160), and Jaime was on probation in two cases, which included a search provision allowing officers, without probable cause, to conduct a search of his residence for narcotics, dangerous drugs and/or paraphernalia.  Banducci also discovered

prosecution to produce evidence regarding the legality of the search. (Petition, Points and Authorities, at 26.) However, the legality of the search is solely a determination made by the judge pursuant to Penal Code section 1528.5, not the jury.

In a related argument, Petitioner appears to argue that the dismissal of these three counts deprived him of standing to challenge the search. (Petition, Points and Authorities, at 27.) However, the inclusion or dismissal of the three counts had no impact on Petitioner's ability or inability to bring a suppression motion under Penal Code section 1538.7.   Accordingly, Petitioner's claim must be denied.

G.     Ineffective Assistance of Trial Counsel - Failure to File Suppression Motion

Petitioner contends that trial counsel deprived him of his right to effective counsel under the Sixth Amendment by 1) failing to bring a suppression motion under Penal Code section 1538.5 due to counsel's erroneous belief that the search was properly conducted under Jaime Quevedo's probation condition; and (2) failing to be aggressive enough in bringing motions and questioning witnesses.

1.     Factual Background

On June 2, 2000, the Kern County Sheriff's Department was investigating a burglary of the manager's office at the Springwood Court apartment complex in Bakersfield.  Several items were taken from the office including computer equipment, keys, and rent checks and money orders.  Petitioner, who was a former maintenance employee of the complex, was identified as a suspect. (Exhibit I, at Exh. 3.)

On that same day, sheriff's deputies received a phone call from an informant who indicated that Petitioner was involved in the burglary, was in possession of some of the stolen property, and was staying at his brother's apartment at 901 Columbus Street, apartment 160, in Bakersfield. (Id. at Exh. 4.)

Detective Banducci then discovered that Petitioner's brother, Jaime Quevedo's address was 901 Columbus Street, apartment 125 (not 160), and Jaime was on probation in two cases, which included a search provision allowing officers, without probable cause, to conduct a search of his residence for narcotics, dangerous drugs and/or paraphernalia.  Banducci also discovered

that Jaime was then in custody and had been since May 28, 2000.  (Exhibit I, at Exh. 5.)  Based on the fact that Jaime was subject to a probation search, Banducci decided to conduct a search of the apartment for evidence which could link to the burglary of which Petitioner was a suspect. Id.

Detective Banducci and two other deputies conducted a search of the apartment and made contact with Petitioner and seized a new can of Folger's coffee, a bottle of Ortho bug spray, two money orders made out to Springwood Apartments, and found a bindle of methamphetamine into an address book located on the bathroom counter.  (Exhibit I, at Exh. 7 p.5; Exh. 5 p.8.)

Petitioner was arrested for possession of stolen property and delaying and obstructing officers.  Petitioner was initially charged with felony burglary, felony receiving stolen property, and misdemeanor resisting arrest, and felony possession of methamphetamine.  However, prior to trial, the prosecutor dismissed all but the drug possession charge stating that although there was information linking Petitioner to the burglary, the information relating to the identity was weak. (1 RT 6.)

2.      State Court Review

This claim was raised in the petition for writ of habeas corpus, HC7513, filed in the Kern County Superior Court on April 24, 2004.  (Exhibit G.)  The claim was denied in a reasoned decision issued May 24, 2002.  (Exhibit H.)  Petitioner next raised his claim in a petition filed in the Fifth District Court of Appeal (Exhibit M), which was denied without prejudice to allow Petitioner to make a better record regarding the facts (Exhibit N).  Petitioner filed again in the Superior Court (Exhibit I), confining his claim to a challenge of the search.  The Superior Court denied the petition on procedural default grounds (In re Clark, 5 Cal.4th 750, 768 (1993) (successive petition); In re Dixon, 41 Cal.2d 756, 759 (1953) (habeas does not serve as a substitute for appeal); In re Shipp, 62 Cal.2d 547, 552 (1965) (determinations of fact made on conflicting evidence cannot be reviewed on habeas, thereby barring the sufficiency of the evidence claim).)  (Exhibit J.)  Petitioner then filed again in the Fifth District Court of Appeal (Exhibit O), and it was denied without prejudice to the filing of a new writ in the trial court to consider new facts and issues raised in declarations filed by defense counsel and Petitioner

(Exhibit P).  Petitioner then filed again in the Superior Court (Exhibit K), and the petition was denied on the merits (Exhibit L).  Petitioner then filed in the Fifth District Court of Appeal (Exhibit Q), and it was denied without comment (Exhibit R).  Lastly, Petitioner filed in the California Supreme Court (Exhibit S), and the petition was denied without comment (Exhibit T).

If the state court adjudicated a claim on the merits, the decision is entitled to deference, no matter how brief.  Lockyer, 538 U.S. 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).  To the contrary, if the state court does not provide a "reasoned decision," this Court must conduct an independent review of the claims.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

In this instance, the Kern County Superior Court denied Petitioner's state court petition on November 25, 2003, for failure to establish a prima facie case.  (Exhibit L.)  In addition, the Court noted that Petitioner failed to properly serve the opposing party (Id.)  Both the Court of Appeal and California Supreme Court, denied the petitions without comment.  (Exhibits R, T.)  Accordingly, there is no reasoned decision issued by the state courts, and this Court must conduct an independent review of the record of this claim under Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002).

3.    Governing Law

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

1
2
3
4

(9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

5
6
7
8
9
10
11
12

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).  More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

13
14
15
16
17
18

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.  Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

19
20
21
22

In evaluating and determining whether counsel's conduct was incompetent, the court must view his actions at the time of his conduct and must apply a "heavy measure of deference" to his judgment.  Strickland, 466 U.S. at 690; Kisselman v. Morrison, 106 S.Ct. 2574.  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances."  Id. at 2588.

23
24
25
26
27
28

"Where, [as here], defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).  Counsel may be found to be

ineffective "where he neither conducted a reasonable investigation nor made a showing of strategic reasons for failing to do so." Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Petitioner is correct that challenges to the admissibility of evidence obtained by police searches and seizures is governed by federal constitutional standards, as recognized by the California Supreme Court in People v. Bradford, 15 Cal.4th 1229, 1921 (1997); see also In re Tyrell J., 8 Cal.4th 68, 76 (1994).

3.    Analysis of Claim

In support of his claim, Petitioner indicates that he repeatedly requested his attorney to file a motion to suppress.  (Petition, at 9.)  However, trial counsel, Charles Soria, did not believe such motion would be viable.

Petitioner indicates that as of June 2, 2000, he had slept at his brother's residence for two nights and had clothing and other personal items at the apartment.  (Exhibit I, at Exhs. 8, 9.)

In trial counsel's first declaration dated July 30, 2002, submitted to the Fifth District Court of Appeal, Mr. Soria declares that he did not investigate as to whether Petitioner was on his brother's apartment lease or whether the landlord knew Petitioner was living there because Petitioner had told him he was hiding out from law enforcement.  (Exhibit B, attached to Petition, at p.76.)  Counsel did not recall the length of time that Petitioner told him he had hid at his brother's apartment before the deputies conducted the search the day of his arrest.  (Id.)  Counsel's investigation and research at the time prior to trial lead him to believe that a motion to suppress would not have been viable as the search was legal.  (Id.)

In his second declaration dated March 30, 2003, submitted to the Fifth District Court of Appeal, defense counsel Charles Soria declares Petitioner never informed him that he had been staying at his brother Jamie's apartment for several days prior to the search and arrest at the request of his sister-in-law, Amanda Hernandez.  (Exhibit F, attached to Petition, at p.86.)  Counsel indicates that the only information available to him was what was in Deputy Banducci's report on page nine, paragraph 3.  Neither counsel or his private investigator recall any direct contact with Amanda Hernandez.  (Id.)  Counsel indicates that his private investigator, Wayne Wallace's interview notes reflect that Amanda Hernandez gave him the impression that

Petitioner had arrived at her apartment the day of his arrest, and she never informed counsel or Mr. Wallace that she asked Petitioner to stay with her for her safety.  (Id.)  Nor did she tell counsel or Mr. Wallace that Petitioner had slept in the apartment for the two nights prior to his arrest.  (Id.)  Absent this information, counsel claims he felt that a motion pursuant to Penal Code section 1538.5 would not have been viable.  (Id. at p.87.)

It is undisputed that law enforcement officers were aware of the probation condition permitting searches of Jaime Quevedo's house for narcotics and that he was incarcerated on unrelated charges since May 28, 2000.  (Exhibit I, at Exh. 5.)  In addition, it is undisputed that the sole purpose of the search of Jaime's apartment was regarding an investigation involving Petitioner, who was not on probation or parole.

Even if neither the defense investigator nor counsel interviewed Amanda Hernandez, Jaime's girlfriend to discover that Petitioner had been staying at Jaime's apartment, Detective Banducci's police report indicated that he knew and believed Petitioner was staying at the apartment and had been there for some days.  (Exhibit I, at Exh. 5.)  Although Petitioner stated he did not live at the residence and was there "just kicking it," he nonetheless  had a key to the residence, some of his belongings were there, and he had stayed there for the two nights prior to the search, information which was readily available to defense counsel if investigated. (Exhibit I, at Exh. 8.)  Counsel acknowledges that Petitioner disagreed with his decision to not file a motion to suppress.  (Exhibit B, to Petition.)

Petitioner's evidence, which was available to counsel at the time a suppression motion could have been filed and presented to the state court on collateral review, gives rise to the argument that he was an overnight guest in his brother's residence, and therefore arguably had a reasonable expectation of privacy to challenge the legality of the search.  See Katz v. United States, 389 U.S. 347, 353 (1967); Minnesota v. Olson, 495 U.S. 91, 96, 98 (1990) (an overnight guest has a reasonable expectation of privacy in a friend's residence despite having no legal interest or authority to determine who may enter the premises); United States v. Gamez-Orduno, 235 F.3d 453, 458-461 (9th Cir. 2000) (marijuana smugglers who stayed overnight in a trailer with owner's permission, free of charge, for rest and food, had reasonable expectation of privacy

to challenge search).  In addition, the factual circumstances present here are virtually identical to

the defendant's use of another's apartment in Jones v. United States, 362 U.S. 257 (1960).  In

distinguishing Jones, the Ninth Circuit recognized and explained such holding in Gordon v.

Duran, 895 F.2d 610, 614 (9th Cir. 1990):

> In *Jones*, the Supreme Court concluded that the defendant, who used a
> friend's apartment while the friend was away, had a key to the apartment, kept
> some clothes there, and slept there "maybe a night," could challenge a search of
> that apartment.  *Id.* at 259, 265, 80 S.Ct. at 733.  As the Court later reasoned,
> *Jones* stands for "the unremarkable proposition that a person can have a legally
> sufficient interest in a place other than his own home so that the Fourth
> Amendment protects him from unreasonable governmental intrusion into that
> place." *Rakas v. Illinois*, 439 U.S. 128, 142, 99 S.Ct. 421, 430, 58 L.Ed.2d 387
> (1978).

Respondent contends that a suppression motion would not have been successful under the

California Supreme Court's holding in People v. Wood, 21 Cal.4th 668 (1999).  There, after

arresting Mofield for possession of narcotics, the officer discovered that he resided with his

girlfriend, who the officer knew was on probation and subject to warrantless searches.  The

officer had also received a tip three days earlier that an individual was selling drugs out of that

residence.  The officer, believing that Mofield might have other drugs at the residence, conducted

a warrantless probationary search. During the search, the officer discovered Woods and Benson

(defendants), who lived in the house, to be in possession of drugs.  The defendants challenged the

warrantless search of the home on the ground that the officer sought incriminating evidence not

against the probationer but against another party residing in the home.  The court held that in the

context of probation searches, the determination is whether the circumstances, viewed

objectively, show a proper probationary justification for an officer's search.  *If so, then the*

*officer's subjective intent is irrelevent*.  Id. at 678-681.

Here, it simply cannot be said that the circumstances viewed objectively show a

probationary justification as it was clear the probationer, Petitioner's brother, was incarcerated on

unrelated charges, and there was no evidence that he was in any way involved in the burglary

investigation.[3]  Moreover, Woods is factually distinguishable from the instant case.  There,

---

[3] This is so because the burglary occurred on the night of May 31 to June 1, 2000, while Jaime was
unquestionably in custody.

unlike here, the probationer was home at the time of the search, and the opinion addressed only

the factual scenario presented in that case.  Id. at 673, 679 n.6.  "Warrantless searches or

probations are justified because they aid in deterring further offenses by the probationer and in

monitoring compliance with the terms of probation. [Citations]" "'By allowing close supervision

of probationers, probation search conditions serve to promote rehabilitation and reduce

recidivism while helping to protect the community from potential harm by probationers.

[Citation.]"  People v. Medina, 158 Cal.App.4th 1571, 1576 (2007) (citations omitted.)

Respondent further argues that the United States Supreme Court decision in United States

v. Knights, 534 U.S. 112 (2001) issued subsequent to Petitioner's trial, held that the officer's

subjective intent is irrelevant to the validity of a probation search.  In Knights, the Supreme

Court held that a probation search need not be based solely on a probationary purpose, but can

also be based on an investigatory purpose.  Id. at 116-117.  However, this holding was based

largely, if not solely, on the fact that the probationer waived his Fourth Amendment rights by

accepting the terms of his probation in lieu of imprisonment and the reasonableness of the search

viewed by the totality of the circumstances.  Id. at 118-122.[4]

Knights is distinguishable from the instant case.  There, Knights was on probation for a

drug offense and subject to search at anytime, with or without a search warrant, warrant of arrest

or reasonable cause.  Just days after Knight was placed on probation, Knights became a suspect

in numerous acts of vandalism against PG & E facilities.  After ongoing investigations including

surveillance of Knights' apartment and conduct of an accomplice, officers decided to conduct a

search of his apartment pursuant to Petitioner's search condition of his probation status.  During

the search, several incriminating items linking Knights to the PG & E vandalism were

discovered.  The court did "not decide whether Knights' acceptance of the search condition

constituted consent to a complete waiver of his Fourth Amendment rights in the sense of

Schneckloth v. Bustamonte [citation], because the search here was reasonable under the Court's

---

[4] In Samson v. California, 547 U.S. 843 (2006), the Supreme Court "applied the totality of the circumstances test in upholding a California law providing that, as a condition of release, every prisoner eligible for state parole must agree to be subject to a search or seizure by a parole officer with or without a warrant, and with or without cause."  United States v. Kriesel, 508 F.3d 941, 946-947 (9th Cir. 2007) (quoting Samson, at 848, 852 n.3, 856.)

general Fourth Amendment 'totality of the circumstances' approach, [citation], with the search condition being a salient circumstance." Id. at 118. The Court pointed out that "Knights' status as a probationer subject to a search condition informs both sides of that balance." Id. at 119. Even in light of Knight, counsel cannot be excused from failing to perform adequately merely because the law subsequently becomes less favorable on an issue that should have been raised at the time of Petitioner's prosecution. The reasonableness of counsel's performance must be evaluated "as of the time of counsel's conduct." Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994) (quoting Strickland v. Washington, 466 U.S. at 690.)

Respondent's reliance on Brigham City, Utah v. Stuart, 547 U.S. 398, 404 (2006), likewise does not resolve the issue. There, the Fourth Amendment intrusion was justified by a compelling factual showing - a melee at a party constituted exigent circumstances justifying entry into the residence. Such an emergency situation is far from the circumstance here involving the search of a probationer's residence subject solely to a condition of probation.

In addition, Respondent's reliance on Whren v. United States, 517 U.S. 806, 813 (1996), for the proposition that a court will not examine the subjective motivations of law enforcement officers in Fourth Amendment challenges, is not persuasive. There, the Court merely affirmed the Fourth Amendment validity of an automobile stop when there was probable cause to believe the driver committed a traffic violation. Nothing in the holding of Whren would have prevented counsel from filing a motion to suppress.

The Ninth Circuit has recently examined an instance where trial counsel failed to file a motion to suppress and relying on Supreme Court authority specifically stated:

> Where the issue is whether counsel's performance was ineffective, we must decide that question based on what counsel's reasons for his decisions actually were, not on the basis of what reasons he could have had for those decision. Thus, just as we may not second-guess a lawyer's reasonable tactical or strategic decisions, *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, we may not deem unreasonable actions to have been "the result of reasonable professional judgment," id. At 690, 104 S.Ct. 2052, by grounding them in considerations that were not, in fact, the lawyer's reasons for acting or failing to act. *See Kimmelman*, 477 U.S. at 385, 106 S.Ct. 2574 ("The trial record in this case clearly reveals that Morrison's attorney failed to file a timely suppression motion, not due to strategic considerations, but because, until the first day of trial, he was unaware of the search and of the State's intention to introduce the bedsheet into evidence."); *Tomlin v. Myers*, 30 F.3d 1235, 1239 (9th Cir. 1994) (rejecting counsel's justification for his failure to move to suppress unconstitutional lineup

1  identification evidence-that he did not believe it would be excluded-where counsel

2  "did not indicate that that was the basis on which he chose not to object").

Moore v. Czerniak, 534 F.3d 1128, 1144 (9th Cir. 2008).

3

4        Here, counsel's proffered reason for deciding to not file a motion to suppress was based

5  entirely upon his unexplained research**,** and his belief that such motion would not be viable.

6  (Exhibit B, to Petition.)  Counsel simply believed that such motion would not have been viable

7  because "his research at the time made [him] reluctantly conclude that the search was legal.

8  (Exhibit B, to Petition.)  In attempting to justify his failure to conduct any investigation into the

9  factual circumstances to establish a basis for a suppression motion, counsel states neither

10  Petitioner nor his sister-in-law informed him that he was staying at Jaime's apartment.  However,

11  counsel cannot fault his client or any other third party for failing to present factual circumstances

12  to establish a viable defense, of which counsel is solely responsible to perform.  The record is

13  clear that there was no strategic justification for counsel's failure to file the motion that would

14  require deference from this Court.  Petitioner's counsel neither investigated, nor made a

15  reasonable decision not to investigate, whether Petitioner had a legitimate expectation of privacy

16  in his brother's residence.  It is apparent that counsel chose not file a motion to suppress due to

17  the fact that he was not aware of Petitioner's status as an overnight guest at his brother's

18  residence.  Any reasonable attorney would have known or should have known that Fourth

19  Amendment issues are controlled by federal, not state law.  Despite his knowledge that Petitioner

20  had been hiding out from law enforcement at his brother's residence prior to his arrest and the

21  state of the law, counsel's failure to conduct any further legal or factual investigation into the

22  issue "fell below an objective standard of reasonableness," and was constitutionally ineffective

under Strickland.  The state court's decision was an unreasonable application of Strickland.

23        As explained, at the time that counsel made the decision not to file a motion to

24  suppress, there was no clearly established precedent to provide constitutional justification for the

25  use of the absent Jaime's probation status to conduct a warrantless search and seizure of a

26  nonprobationer who arguably was residing at the residence.  An objectively reasonable lawyer

27  would not have chosen to not file a motion to suppress.

28        The resulting prejudice of counsel's incompetence is clear.  The sole conviction was for

possession of methamphetamine, a third-strike felony for Petitioner.  Exclusion of the drugs

seized from the apartment would have obviated a conviction on the drug charge.  Based on the

evidence before this Court, there is a reasonable probability that a motion to suppress the

evidence would have resulted in a full acquittal, if not a plea to a reduced non-strike charge.

Accordingly, the Court recommends that habeas corpus relief be granted on this claim.

H.      Ineffective Assistance Counsel for Failure to Aggressively Raise Motions and Examine
        Witnesses

        Respondent failed to address this claim, and rightfully so, as it is too conclusory and

vague to support a basis for relief under section 2254.  Conclusory allegations do not warrant

habeas relief.  See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory

allegations made with no reference to the record or any document do not merit habeas relief).

Specifically, Petitioner has failed to articulate how defense counsel was ineffective and how he

was prejudiced thereby, as such, there is no basis upon which to find a Strickland violation.

H.      Effective Assistance of Appellate Counsel - Failure to Challenge Trial Counsel's
        Ineffectiveness

        Petitioner contends that appellate counsel was ineffective for failing to challenge trial

counsel's failure to file a suppression motion.

        This claim was raised in the petition for writ of habeas corpus, HC7513, filed in the Kern

County Superior Court on April 24, 2004.  (Exhibit G.)  The claim was denied in a reasoned

decision issued May 24, 2002.  (Exhibit H.)  He later filed a petition in the California Court of

Appeal, Fifth Appellate District, which was denied without comment.  (Exhibits Q, R.)

Petitioner then filed a petition in the California Supreme Court, which was also summarily

denied.  (Exhibits S, T.)  This Court "looks through" that decision and presumes it adopted the

reasoning of the California Court of Appeal, the last state court to have issued a reasoned

opinion.  See Ylst v. Nunnemaker, 501 U.S. at 804-05 & n. 3.

        For the same reasons that trial counsel was incompetent, appellate counsel was likewise

ineffective for failing to challenge defense counsel's failure to file a motion to suppress.

Appellate counsel shared defense counsel's belief that Petitioner did not have a legitimate

expectancy of privacy in his brother's residence.  Appellate counsel's March 19, 2001, letter

specifically stated:

> Please be advised if your brother was on probation, then there was no merit to a motion to suppress. If the probation was revoked and the police should have known that, there may be grounds to seek a writ of habeas corpus. I cannot investigate that issue without the information I requested you to provide. You must at least know your brother's name and date of birth. I suggest you contact your brother or sister and obtain as much of the information I requested if you wish me to consider whether to file a Petition for Writ of Habeas Corpus alleging ineffective assistance of counsel for failure to file a meritorious motion to suppress.

(Exhibit N, to Petition.)

Appellate counsel's subsequent letter dated July 3, 2001, informed Petitioner of the following:

> You asked for my opinion on the decision of *Arkansas v. Sullivan*, as pertains to your case. That case involved a search of an automobile stopped for speeding pursuant to the police department's inventory search policy, where it was asserted the stop was for the purpose of searching the car rather than citing the driver. A suppression hearing, had one been held in your case, would have involved the case law pertinent to probation searches. In evaluating the legality of a probation search, as occurred when you were arrested in your brother's apartment, the California Supreme Court applies the same objective standard affirmed [in] *Arkansas v. Sullivan* derived from *Whren v. United States* (1996) 517 U.S. 806 [116 S.Ct. 1769, 135 L.Ed.2d 89] and other Supreme Court decisions, i.e., whether the circumstances, viewed objectively, show a proper probationary justification for an officer's search. If they do, then the officer's subjective motivations with respect to a third party resident do not render the search invalid. (*People v. Woods* (1999) 21 Cal.4th 668[,] 678-681 [if persons live with a probationer, shared areas of their residence may be searched based on the probationer's advance consent], *People v. Robles* (2000) 23 Cal.4th 789, 795-796 [defendant's brother, who had agreed to warrantless searches of his "property, including any residence premise[s]" as a condition of probation, lived with defendant in apartment C on the day police entered the garage].) In my opinion *Arkansas v. Sullivan* does not support a challenge to search of your brother's apartment on grounds the officer were really intent upon searching for evidence against you.

(Id.)

The last letter was written by appellate counsel on July 16, 2001, which stated:

> You forwarded more case decisions and asked for my opinion as to your case. You were arrested in your brother's apartment. Your brother was subject to search of his residence as a term of his probation. Your brother's apartment was not searched pursuant to a warrant.
>
> ....................................
>
> Please be advised, this is the last response I am going to provide to any future requests from you for my opinion on any particular case because I have thoroughly researched the issue and have attempted to explain my opinion. It

1  does not appear (without proof your brother's probation order was judicially
2  revoked and the officer's knew or should have known of that fact( there is any
   merit to that claim.  I presume you disagree with my opinion.  Therefore, I am
3  enclosing a form you may use to file a Petition for Writ of Habeas Corpus
   challenging your lawyer's decision to not file a motion to suppress.

4  (Id.)

5       Here, for the same reasons explained above in section G, it simply cannot be said that the

6  circumstances viewed objectively show a proper probationary justification as it was clear the

7  probationer, Petitioner's brother, was incarcerated on unrelated charges, and there was no

8  evidence that he was in any way involved in the burglary investigation.  Appellate counsel's

9  failure to challenge trial counsel's decision to not file a motion to suppress was error and was

10  objectively unreasonable under prevailing norms.  As demonstrated above, the prejudice is clear

11  and the state court's determination of this claim was an unreasonable application of Strickland.

12  I.     Eighth Amendment Violation - Cruel and Unusual Punishment

13       Petitioner contends that his sentence of 25 years to life under California three-strikes law

14  constituted cruel and unusual punishment under the Eighth Amendment.

15       The California Fifth District Court of Appeal issued a reasoned denial on direct appeal

16  (Exhibit D), and the California Supreme Court issued a summary denial, thereby adopting the

17  lower court reasoning (Exhibit E).

18       As previously stated, Petitioner was found guilty of unlawful possession of .32 grams of

19  methamphetamine in violation of California Health & Safety Code section 11377, subdivision

20  (a).  Under California law, possession of methamphetamine is a "wobbler" which can be

21  prosecuted as either a felony or a misdemeanor.  Cal. Health & Saf. Code § 11377 (a).  However,

22  the offense is considered a felony until "expressly declared otherwise by a trial court."  People v.

23  Wood, 62 Cal.App.4th 1262, 1268 (1998).  In the instant case, the trial court denied Petitioner's

24  motion to declare the current offense a misdemeanor.  (CT 199; II RT 7.)

25       A criminal sentence that is not proportionate to the crime for which a defendant is

26  convicted may indeed violate the Eighth Amendment.  In Rummel v. Estelle, 445 U.S. 263, 100

27  S.Ct. 1133 (1980), the Court upheld a life sentence imposed under a Texas recidivist statute for a

28  defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by

imprisonment for two to ten years.  Rummel v. Estelle, 445 U.S. 263, 266, 100 S.Ct. 1133, 1135 (1980).  However, because he had two prior felony convictions (for fraudulent use of a credit card and passing a forged check), and had served two prior prison terms, the prosecution chose to proceed under the state's recidivist statute, which carried a life sentence.  Id. The Supreme Court held that Rummel's sentence of life imprisonment *with* the possibility of parole did not violate the Eighth Amendment.  Id. at 365-266, 100 S.Ct. at 1135. (emphasis added).   The Court noted that Rummel had suffered two separate convictions and terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the statute for "petty" offenders.  445 U.S. at 278-81, 100 S.Ct. at 1141.

　　　Three years later, the U.S. Supreme Court set forth the criteria for finding a sentence to be cruel and unusual punishment under the federal Constitution and affirmed a decision of the Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of parole for a seven-time nonviolent felony recidivist.  Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001 (1983).  Applying the proportionality criteria, the Court concluded that Solem's sentence was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in light of his prior six nonviolent felony convictions: three for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for driving while intoxicated.  Id. at 279-81, 103 S.Ct. at 3004-5.  The Court emphasized that Solem's life sentence was far more severe than the sentence it had considered in Rummel, because Rummel was likely to be eligible for parole in twelve years, while Solem was given no possibility of parole at all. Id.

　　　In Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991), the defendant received a mandatory sentence of life in prison *without* the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense.  Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991) (emphasis added).  The U.S. Supreme Court upheld the sentence, with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment.  Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review.  Justice Kennedy, joined by Justices O'Connor and Souter, stated that a

noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime, but concluded that courts need not examine the second and third factors of intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005.  The Ninth Circuit, adopting Justice Kennedy's concurring opinion in Harmelin, now refers to the test articulated as "the rule of Harmelin."  Andrade v. Attorney General of the State of California, 270 F.3d 743, 756 (9th Cir. 2001).

The majority of the justices in the Harmelin court agreed that outside capital punishment, deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of objective guidelines for terms of imprisonment.  Harmelin, 501 U.S. 957, 964, 111 S.Ct. 2680 (1991).  The threshold for such an inference of disproportionality is high.  See, Id. at 1001, 111 S.Ct. at 2707 (Kennedy, J. concurring).  Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, the sentence will not be considered cruel and unusual punishment under the Eighth Amendment.  United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

The Harmelin Court concluded that the defendant's sentence did not meet the threshold factor of "gross disproportionality."  Justice Kennedy stressed the serious nature of Harmelin's offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively minor, nonviolent crime at issue in Solem."  Harmelin v. Michigan, 501 U.S. 957, 1002, 111 S.Ct. 2680, 2705 (1991).  Justice Kennedy further noted that the "possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" and that the quantity of cocaine possessed by Harmelin had a potential yield of between 32,500, and 65,000 doses.  Id.

In Lockyer v. Andrade, 123 S. Ct.1166 (2003), the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years.  Id. at 1173.  Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has

"not established a clear and consistent path for courts to follow." Id.  The Supreme Court held

that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable

application of' frame work is the gross disproportionality principle, the precise contours of which

are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.

In Ewing v. California, 123 S. Ct.1179 (2003), the Supreme Court again reviewed the

Supreme Court's Eighth Amendment jurisprudence, and chose to adopt Justice Kennedy's view [5]

that:

> [There are] four principles of proportionality review-- the primacy of the
> legislature; the variety of legitimate penological schemes; the nature of our federal
> system; and, the requirement that proportionality be guided by objective factors–
> that inform the final one: The Eighth Amendment does not require strict
> proportionality between the crime and the sentence.  Rather, it forbids only
> extreme sentences that are 'grossly disproportionate' to the crime.

Ewing, at 1186-1187.   In addition to Andrade and Ewing, the Supreme Court has also upheld a

life sentence under Texas's habitual offender statute for obtaining $120 by false pretenses,

Rummel v. Estelle, 445 U.S. 263 (1980), and a life sentence without the possibility of parole for

possession of cocaine.  Harmelin v. Michigan, 501 U.S. 957 (1991).

Turning to Ninth Circuit case law, in Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004), the

Court held that a 25 year to life sentence under California's Three Strikes law for a third offense

of shoplifting a $199 VCR was cruel and unusual punishment because Ramirez's criminal

history was "comprised solely of two 1991 convictions for second-degree robbery obtained

through a single guilty plea, for which his total sentence was one year in county jail and three

years probation."  Id. at 758.

In this case, the appellate court properly applied governing Supreme Court precedent.  In

denying Petitioner's claim, the Court of Appeal held, in pertinent part:

> [Petitioner's] voluntary manslaughter conviction was for the beating and
> stabbing death of a fellow party-goer.  Like the crime of felony murder, voluntary
> manslaughter is a crime so serious and violent that "'no sentence of imprisonment
> would be disproportionate.'" (Harmlein v. Michigan, supra, 501 U.S. at p. 1004;
> Solem v. Helm, supra, 463 U.S. at p.290, fn. 15.)  And crimes involving drug use
> and possession are also serious because they often give rise to violence.
> "Possession, use, and distribution of illegal drugs represent 'one of the greatest

---

[5]As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991), citing Solem
v. Helm, 463 U.S. 277, 288 (1983).

problems affecting the health and welfare of our population.'" (*Harmelin v. Michigan*, *supra*, 501 U.S. at p. 1002.) "Quite apart from the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture." (*Ibid.*)

Moreover, [Petitioner] has a long history of recidivism. He has continued to commit crimes involving violence and drugs. And he has, on numerous occasions, violated the terms of his probation and parole. [Petitioner] is precisely the kind of repeat felon whom the Three Strikes law was designed to deter. As he has continued to commit felonies, the state now has no choice but to incarcerate him for the protection of society.

Accordingly, we hold that [Petitioner's] sentence of 25 years to life does not violate the federal constitutional ban on cruel and unusual punishment.

(Exhibit D, Opinion, at 7-8.)

Petitioner's criminal history including violent felonies and the failure of previous incarcerations to deter his criminal behavior makes Petitioner the precise candidate for which California's Three Strikes sentencing law was implemented. Viewed in this context, Petitioner's case is simply not a "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Harmelin, 501 U.S. at 1005. The appellate court properly considered the current offense of possession of methamphetamine as well as his prior strike offenses (attempted robbery and voluntary manslaughter) and reasonably concluded that his sentence was not unconstitutionally disproportionate. The appellate court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, nor an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2).

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    The instant petition for writ of habeas corpus be GRANTED with respect to Petitioner's claims of ineffective assistance of trial and appellate counsel and DENIED with respect to all other claims.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

1   Within thirty (30) days after being served with a copy, any party may file written objections with

2   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

3   Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

4   and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the

5   objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

6   636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

7   may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

8   Cir. 1991).

9        IT IS SO ORDERED.

10       **Dated:**   __**June 17, 2009**__          _____**/s/ Dennis L. Beck**_____
                                                      UNITED STATES MAGISTRATE JUDGE